## AFFIDAVIT

I, Daniel Rutherford, being duly sworn, depose and state the following:

## INTRODUCTION

1. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since November of 2023. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516. I am empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of 21 U.S.C. § 878. I hold a Bachelor's Degree in Aeronautics from Embry-Riddle Aeronautical University. I have undergone the following training:

    a. I have completed the DEA Basic Agent Training Academy, which is a 17-week course in Quantico, VA that included (but was not limited to) training in the following areas: surveillance, undercover operations, report writing, confidential source management, drug identification, legal principles, search warrant operations, case initiation and development, interview and interrogation, defensive tactics, physical training, and firearms proficiency. I continue to receive training on a daily basis by conducting criminal drug investigations and drawing from the expertise of agents more experienced than myself.

    b. Additionally, as a DEA Special Agent, my experience includes participating in criminal arrests, conducting physical surveillance, trash seizures, searching for evidence during court-authorized search warrants, and authoring search warrants as well as subpoenas.

## PURPOSE OF AFFIDAVIT

2. This affidavit is made in support of an application for a federal arrest warrant and criminal complaint against Lindsay ANDERSON **("ANDERSON")** for Possession with Intent to Distribute Controlled Substances, namely, a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, and a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code §§ 841(a)(1) and (b)(1)(C).

3. My knowledge of this investigation is based upon my own personal observations, as well as the observations and investigations conducted by other law enforcement officers and investigators concerning the facts and circumstances involved in the subject investigation. I have not included in this Affidavit all the facts known to me, but only that information sufficient to establish probable cause to believe she committed the above offense.

## SUMMARY OF PROBABLE CAUSE

4. In June 2024, members of the DEA Columbus District Office began an investigation into the Sir Jeffrey CARROLL ("CARROLL") Drug Trafficking Organization ("DTO") operating in the Southern District of Ohio.

5. On September 19, 2024, investigators received a call from a detective with the Chillicothe Police Department ("CPD"). The Detective relayed that CPD received information that two individuals, Robert MATTHEWS and Lindsay ANDERSON, were traveling to the Hollywood Casino in Columbus, Ohio to purchase crystal-methamphetamine from their source of supply. He further stated that the

2

individuals were traveling in a 2013 green Kia Soul bearing Ohio license plate KCX4983. As a result of this information, CPD and the Ohio State Highway Patrol (OSHP) were conducting continuous surveillance on the Kia vehicle. DEA investigators recognized the green Kia Soul as the same vehicle they observed Sir Jeffrey CARROLL meet with on July 30, 2024, and appeared to conduct a hand-to-hand drug transaction in Chillicothe, Ohio. Upon receiving this information, the DEA Columbus office checked the current location of one of CARROLL's vehicles on which they had a tracking device which had been authorized by Franklin County Municipal Court, specifically, a 2012 white Audi bearing Ohio license plate JYZ2247. Investigators noted the Audi was traveling towards the Hollywood Casino.

6. At approximately 2:20 p.m., a Detective from CPD observed the green Kia Soul turn in to a Circle K gas station located at 411 Georgesville Road in Columbus and park at the gas pumps. Officers identified Lindsay ANDERSON as the driver and MATTHEWS as the front passenger.

7. At approximately 2:40 p.m., investigators observed the white Audi turn North on Georgesville Road and then turn into the Circle K gas station located at 411 Georgesville Road, and park directly beside the green Kia Soul. CPD Detectives then observed MATTHEWS exit the front passenger seat of the green Kia Soul and enter into the front passenger seat of CARROLL's white Audi. After a few moments, MATTHEWS was observed exiting the front passenger seat of the white Audi carrying a black bag and placing it in the rear passenger side of the green Kia Soul and entering back into the front passenger seat of the green Kia Soul. Shortly after the exchange, both vehicles departed

3

in separate directions. Surveillance was maintained on the green Kia Soul driven by ANDERSON with MATTHEWS in the front passenger seat.

8. As surveillance continued, investigators observed the green Kia Soul travel on US 270 East toward US 23 South. The Kia Soul eventually stopped at the Certified Gas Station, located at 5991 S. High Street in Columbus. MATTHEWS and ANDERSON were observed exiting the vehicle and entering into the gas station holding hands. After several minutes, MATTHEWS and ANDERSON exited the gas station carrying miscellaneous food items and MATTHEWS entered into the driver seat and ANDERSON entered into the front passenger seat. The green Kia Soul departed the area where surveillance was maintained.

9. The vehicle traveled southbound on US 23. The vehicle was observed by OSHP Troopers making several traffic violations while on US 23, and CPD Detectives also advised Troopers that MATTHEWS had a suspended driver's license which was confirmed through the Ohio Law Enforcement Gateway. OSHP Troopers were able to conduct a traffic stop on the vehicle at US 23 near Rubi Lane in Pickaway County. During the traffic stop, a Pickaway County Sheriff's Office certified K9 was deployed to conduct a free-air sniff of the vehicle for the presence of drugs which yielded a positive result. During a probable cause search of the vehicle, officers recovered approximately 270 gross grams of suspected crystal-methamphetamine and drug paraphernalia. The suspected methamphetamine was located in a grocery bag concealed in what appeared to be a bag of trash. The evidence was secured by Troopers who then released the evidence to the DEA for the pending investigation in reference to CARROLL. DEA investigators conducted a field test on the suspected crystal-methamphetamine which yielded a

4

positive result for the presence of methamphetamine. MATTHEWS and ANDERSON were not interviewed and were released without further incident. The suspected methamphetamine has been submitted for laboratory analysis by the DEA. Based on my experience and training, I am aware that 270 gross grams of methamphetamine is a distribution quantity.

10. On or about November 4, 2024, your Affiant applied for and was granted a criminal complaint and arrest warrant for Robert Elwood MATTHEWS for a violation of Title 21, United States Code, Section 841, Possession with the Intent to Distribute a Mixture or Substance Containing a Detectable Amount of Methamphetamine, a Schedule II Controlled Substance by the Honorable United States Magistrate Judge Kimberly A. Jolson.

11. On the following day, November 5, 2024, law enforcement traveled to Chillicothe to arrest MATTHEWS. At approximately 11:00 a.m., investigators observed MATTHEWS and ANDERSON appear in the alley behind 857 Adams Avenue in Chillicothe. Shortly after, investigators observed MATTHEWS enter into a red SUV as the driver and ANDERSON as the front passenger. Eventually, the SUV departed the area where CPD marked units conducted a traffic stop and placed MATTHEWS in custody without incident. During the traffic stop, a CPD canine was deployed for a free air sniff of the vehicle which yielded a positive result for the presence of narcotics. During a probable cause search of the vehicle, CPD officers located a small amount of marijuana and drug paraphernalia that included a broken pipe containing residue. Due to investigators training and experience, investigators know this type of pipe is used to smoke crystal-methamphetamine.

12. During the traffic stop, Chillicothe Municipal Court Probation ("Probation") arrived on scene due to ANDERSON being on probation. ANDERSON informed Probation that she has been using methamphetamine and would test positive for methamphetamine if given a drug test. ANDERSON further stated that she was staying at 857 Adams Avenue. Probation transported ANDERSON back to 857 Adams Avenue where they began a search of her bedroom and to conduct a drug test. A Detective from CPD assisted Probation who performed a search of the bedroom occupied by MATTHEWS and ANDERSON. A search yielded a loaded Hi-Point 9mm handgun and a locked Sentry Safe both located in the bedroom. During this time, a Detective from CPD called your Affiant who was conducting an interview with MATTHEWS at the CPD Station to ask MATTHEWS about the safe. Your Affiant asked MATTHEWS about the safe that was located inside 857 Adams Avenue, to which MATTHEWS stated that he did not know the combination. The CPD Detective told your Affiant that ANDERSON stated that she also did not know the combination of the safe.

13. Based upon the evidence found during Probation's search of ANDERSON's residence and her admission to using methamphetamine, a CPD detective applied for and was granted a state search warrant for the safe. Upon the execution of the warrant, investigators located and seized in total approximately 45 grams of a white powdery substance in 3 separate clear plastic baggies which was consistent with the appearance of the fentanyl that was seized from one of Sir Jeffrey CARROLL's residences on September 30, 2024. Additionally, investigators located and seized in total approximately 68 grams of a crystal-like substance in 4 separate clear plastic baggies which was consistent with the appearance of the crystal-methamphetamine seized on September 19,

2024, previously mentioned in this affidavit. Additionally, investigators located and seized in total approximately 100 grams of a green leafy substance suspected to be marijuana, and approximately $1,087 in United States currency. Probation arrested ANDERSON for a probation violation due to ANDERSON testing positive for methamphetamine and fentanyl and is currently being held at the Ross County Jail.

14. Based on my experience and training, your Affiant is aware that the quantities of fentanyl and methamphetamine seized from the safe are distribution rather than personal use quantities.

15. On or about November 6, 2024, a CPD Detective reviewed a jail call that was obtained from the Ross County Jail where ANDERSON was being held pursuant to her probation violation. Earlier on that day, ANDERSON had placed a call to an unknown female (UF). As the call was being placed, ANDERSON is heard talking to someone within the jail as the phone was ringing. The following statements were made during the call and depicted as quotes, with either the exact phrasing or words to that effect:

> **ANDERSON**: "I got an indictment coming I got caught with.. *inaudible* .. fetty." [Based on my experience and training, your Affiant is aware that "fetty" is a common street term for fentanyl.]
>
> **ANDERSON**: "I'm so fucked bro oh my.."

At this time, the call was answered as follows: [A Detective from CPD believes that the call is to ANDERSON's mother, Monica Hollon]

> Hollon: Hello?
>
> Hollon: "Them motherfuckers don't get in a hurry I've called and called and fucking called"

7

**ANDERSON**: "Robert ain't here he's in Pickaway County"

Hollon: "What's he get in Pickaway?"

**ANDERSON**: "Umm what you think? … from.."

Hollon: "Oh okay, okay is that what it is?"

**ANDERSON**: "Yeah they said he is not here.. *inaudible*"

Hollon: "Huh?"

**ANDERSON**: "Its gotta be"

Hollon: "Well I've looked everywhere but there, so I'm gonna look there next"

**ANDERSON**: "Yep umm, they brought me in because they got the safe"

[Agent Note: Based on context of this conversation, Investigators believe ANDERSON is referencing the safe that was located in the bedroom of 857 Adams Avenue in Chillicothe which she previously claimed to not know the combination.]

Hollon: "They got what?"

**ANDERSON**: "They got in the safe"

Hollon: "How?"

**ANDERSON**: "Uh, they got a search warrant for it"

Hollon: "They're fucking shitting me"

**ANDERSON**: "Yep"

Hollon: "Is that why you are there?"

**ANDERSON**: "Huh?"

Hollon: "Is that why you are there?"

**ANDERSON**: "No. They made the PV serve it"

Hollon: "They what?"

**ANDERSON**: "They gave me that PV because I tested positive for meth .. and then that"

Hollon: "Oh .. okay so are you bondable?"

**ANDERSON**: "No, not till I go to court in the morning, but they should.. *inaudible* please come get me."

Hollon: "I will"

**ANDERSON**: "Did Mike text you? Go get Robert's wallet, the CashApp card is in it, they got all the cash."

[Agent Note: Investigators know that the only cash seized was approximately $1,087 that was located inside the safe in the residence.]

Hollon: "Where at?"

**ANDERSON**: "Its in uh.. Mike has got Robert's wallet, but they got the $1700."

Hollon: "Oh okay.. was anything else in there?"

**ANDERSON**: "Mhmm.."

[Agent Note: Investigators believe that ANDERSON is referencing the safe and the only other items located in the safe – the suspected narcotics and an old prescription bottle of antibiotics prescribed to Frances Detty.]

Hollon: "Okay.. alright *sigh* alright.. uh so go get Mike's and get it?"

**ANDERSON**: "Yeah, get the wallet."

Hollon: "Okay.. alright"

**ANDERSON**: "*inaudible*.. there should be money, there is money on his Cashapp but I am not sure how much"

Hollon: "Okay, and.."

**ANDERSON**: "I will worry about bonding him out when I get out"

Hollon: "Okay, alright.. alright"

[Agent Note: The final minute of the call was a discussion about when ANDERSON was going to contact Monica Hollon again.]

16. On November 7, 2024, investigators conducted a field test on the suspected crystal-methamphetamine located in the safe at 857 Adams Avenue in Chillicothe which yielded a positive result for the presence of methamphetamine. Investigators also conducted a field test on the suspected fentanyl located in the safe at 857 Adams Avenue in Chillicothe which yielded a positive result for the presence of fentanyl.

## CONCLUSION

17. Based on the facts set forth in this Affidavit, there is probable cause to believe that on November 5, 2024, in the Southern District of Ohio, Lindsay ANDERSON did knowingly and intentionally possess with the intent to distribute controlled substances, namely, a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, and a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code § 841(a)(1) and (b)(1)(C).

_____
Daniel Rutherford
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
this __7th__ day of November 2024.

_____
Kimberly A. Jolson
United States Magistrate Judge